**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Richmond Division)**

———————————————————

CHESAPEAKE BANK,  )
                 )
        *Plaintiff*,  )
                 )
    *v.*          )    Case No.:  3:10-cv-247-REP
                 )
JOSEPH GERRY CULLEN, *et al.*,  )    The Hon. Robert E. Payne
                 )
        *Defendants*.  )
———————————————————)

**REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OF**
**DEFENDANT HALEY, DIVANS, AND CHANCE PRODUCTION**

Defendants Thomas Haley, David Divan, and Chance Productions, Inc., by counsel, in reply to the Plaintiff's Opposition to the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim upon which Relief may be Granted, state as follows:

I.      **UNDISPUTED FACTUAL BACKGROUND**[1]

     **A.      *Chance Productions has no ties to Virginia.***

Chance Productions, Inc. (hereinafter "Chance Productions") is a small consumer products company formed under the laws of the State of New York in 2004.  Its principal place of business is the State of New York, where it is licensed to do business.  Chance Productions is engaged in selling products to less than ten retailers in the United States.  It is owned and operated by David Divan and Michael Jud.[2]  Both Divan and Jud are residents of the State of New York.  Chance Production's only office in the United States is located at its principal place

——————————————

[1]      See Declarations of David Divan and Thomas Haley attached to Motion to Dismiss.

[2]      The Plaintiff voluntarily dismissed its claims against Michael Jud on June 28, 2010.

of business, 203 Crabapple Road, Manhasset, New York.  Chance Productions has no staff in either the United States or China, and it has no inventory or warehouse in the United States.  As part of Divan's role with Chance Productions, he spends approximately six months of the year in China, engaged in product development, contract discussions, and in oversight of various manufacturers.

Chance Productions, in April of 2009, engaged Atomica to design products and packaging for certain products Chance Productions desired to have manufactured and marketed in the United States.  Over the period of April to December 2009, Divan met with Atomica personnel on Chance Production matters at Atomica's Pennsylvania office approximately six different times.

Chance Productions has no business relationship with Chesapeake Bank, located at 97 North Main Street, Kilmarnock, Virginia.  Chance Productions has never entered a contract with the Bank, had accounts with the Bank, or received funds from the Bank.  Chance Productions has it ever been present at the Bank or directed written correspondence directly to the Bank.

Chance Productions is not licensed to do business in the Commonwealth of Virginia, has no office in the Commonwealth, and owns no real estate or tangible property in Virginia.  Chance Productions does not conduct *any* business in the Commonwealth, has not entered into *any* contract to render services in Virginia, and has not, to its knowledge, furnished any materials directly to Virginia.  Chance Productions has no direct contact with the Commonwealth in conducting its business and has never been present or entered in the Commonwealth while conducting business.

Chance Productions has no agents, employees, or representatives in Virginia.  The two sole principals of Chance Productions do not reside in Virginia.  In summary, Chance

Productions has absolutely no ties to Virginia that would justify this Court from exercising personal jurisdiction over it.

### B.      David Divan has no ties to Virginia.

David Divan's personal residence is 301 Cathedral Parkway, New York, New York. Divan does not own real estate or other tangible property in Virginia.  Divan has not been present in the Commonwealth of Virginia for years.   Divan has no relationship *whatsoever* with Chesapeake Bank.  Divan does not work in Virginia.   Divan does not have any personal connections to Virginia, business or otherwise.

In Divan's work as co-owner of Chance Productions, he visited the Pennsylvania offices of Atomica only approximately six occasions during the period of April 2009 to December 2009. Divan understood, correctly, that Atomica did not have Virginia offices.  Divan has never been employed by Atomica.   Initially, Atomica provided product design and packaging design services for Chance Productions solely as a customer.  During the summer of 2009 the principals at Atomica proposed a joint venture relationship with Chance and Atomica to operate under the entity So Real Brands; the formal joint venture agreement was signed in October, 2009.  A month later, the joint venture ceased to exist as a result of Atomica going out of business in November 2009.   At no point did Divan ever transact any business in Virginia that would justify this Court exercising personal jurisdiction over him.

### C.      Thomas Haley has no ties to Virginia.

Thomas Haley is a resident of the State of New Jersey.  Haley does not own and real estate or tangible property in Virginia.  The only times Haley has been in Virginia in the past ten years was while travelling on interstate highways en route to another state.  Haley does not have any business or personal connections to Virginia.

Beginning in the summer of 2009 Haley began working for Atomica, Inc., in Pennsylvania. Haley was an employee of Atomica and never had any ownership interest in Atomica. He was terminated in December 2009 when Atomica closed its doors and ceased doing business. Haley was employed by Atomica for less than six months in 2009. Haley has had no other business relationship with Atomica Design or So Real Brands since that time. During his six month employment, Haley was not provided with any financial information relating to Atomica and had no knowledge of Atomica's business relationship or contracts with Chesapeake Bank.

### D.    Plaintiff has alleged no specific facts supporting its claims against Chance Productions, Divan, or Haley.

Nowhere in Plaintiff's opposition does Plaintiff explain what facts support its individual claims against Chance Production, Divan, or Haley. Plaintiff only provides conclusions and bald allegations against all "Defendants." Plaintiff fails to identify any facts that could support the serious charges that Plaintiff has asserted against Haley, Divan and Chance Productions, including claims of violating the Racketeer Influenced and Corrupt Organizations Act (the "RICO Act"), conspiracy, fraud, conversion, and unjust enrichment/money had and received.

### E.    Plaintiff has alleged no agreement between Stromberg and either Chance Productions, Divan, or Haley.

Stromberg was the CFO of Atomica Design, whose office is based in Harrisburg, Pennsylvania. Stromberg's[3] actions in forwarding invoices and communication to Chesapeake Bank were, upon information and belief, conducted from Atomica Offices. The complaint in the

---

[3]    Haley, Divan, and Chance Productions deny having any knowledge of the Chesapeake Bank-Atomica relationship or of the Stromberg's scheme as alleged in the complaint. For purposes of this Motion, it will be assumed as true that Stromberg, as Chief Financial Officer of Atomica and as Chesapeake's primary contact with Atomica, forwarded the invoices alleged in the complaint from Pennsylvania to Chesapeake Bank in Virginia.

instant matter is full of conclusory, general allegations of participation in the Stromberg scheme to defraud.  There are no factual allegations that Haley, Divan, or Chance Productions agreed to participate in or were aware of Stromberg's fraudulent scheme.  The allegations in the complaint only support a garden variety fraud scheme conducted by a single individual, Stromberg, who chose not to defend himself and against whom default has already been entered.

The Plaintiff argues in its Opposition that the following allegations suffice as against Haley, Divan, and Chance Productions, to support the overwhelmingly serious and burdensome allegations of participation in a RICO and common law conspiracy:

(a) **Allegations as to Atomica:**[4]

- On July 27, 2007, Atomica entered into a Cash Flow Agreement with Chesapeake Bank,whereupon Atomica agreed to sell certain of its accounts receivables to Chesapeake Banksubject to the approval of Chesapeake Bank.[5]

- In accordance with the Cash Flow Agreement, Atomica would electronically forward accounts receivable information to Chesapeake Bank.

- For those receivables Chesapeake Bank accepted, it would place a portion of the proceeds of the sale of each receivable in Atomica's account at Chesapeake Bank for Atomica to draw upon for its business purposes.

  As collateral, Atomica granted Chesapeake Bank a security interest in all of its personal property, assets, and general intangibles.

(b) **Allegations as to Chance Productions:**

- In the Spring of 2009, Atomica began to collaborate with Chance Productions. Divan was the controlling member of Chance Productions.[6]

---

[4]    While the Plaintiff chooses to include these allegations as pertaining to these Defendants there is no evidence or factual particular alleging Haley (a simple employee of Atomica), Divan (out of New York), or Chance Productions (out of New York), had any awareness of the existence of Chesapeake Bank, its relationship with Atomica, or the existence of a cash flow agreement.

[5]    This Cash Flow Agreement was entered two years before Divan entered into the joint venture with Atomic for the So Real Brands and two years before Haley was hired by Atomica.  Neither Divan nor Haley had any knowledge of this Cash Flow Agreement.

[6]    The undisputed record evidence is that Jud and Divan are equal co-owners.

- DiPalma [principal of Atomica] and Divan discussed the creation of a joint venture between Atomica and Chance Productions, whereupon Atomica would be responsible for product development and design and Chance Productions would be responsible for manufacturing and sales.[7]

- Atomica and Chance Productions agreed the joint venture would be called So Real Brands and that Chance Productions and Atomica would each own 50% of So Real Brands.

- Atomica was required to disclose the joint venture pursuant to the Cash Flow Agreement but apparently Atomica breached this obligation.  Chesapeake Bank was not made aware of the joint venture and did not agree to fund the joint venture through the Cash Flow Agreement or any other Agreement.[8]

- Chance Productions and Atomica agreed that costs incurred by each on the joint venture would be split, as would the eventual profits.

- Atomica designed arts and craft kits all named with a prefix of "So Real" or "So Cool" to draw recognition to So Real Brands, a line of scented markers named "Snozzberry," and two art products for which Chance Productions held patents rebranded by Atomica as "Trizio" and "Hexos."

- Atomica hired Haley, a close friend of Divan, as a senior account manager, to work on the joint venture, So Real Brands.

- With the creation of the joint venture underway, Stromberg, Haley, Divan and others and their wholly controlled entities Logistics, Chance Productions, and So Real Brands set out to exploit Atomica and defraud Chesapeake Bank.[9]

- Defendants exploited Chesapeake Bank's auditing process by disguising Haley, Divan and others as the contacts for supposed legitimate customers of Atomica,

---

[7]     It is equally undisputed that that Chance Productions was initially a customer of Atomica and that the Joint Venture Agreement was not executed until October of 2009.

[8]     It is undisputed that the Cash Flow Agreement, which is attached to the Complaint, was executed by Dipalma on behalf of Atomica and the Bank; there is no evidence or even a particularized allegation that Haley, Divan, or Chance Productions was aware of its existence.

[9]     Haley had no ownership interest in any of these companies.  Divan was co-owner only of Chance Productions.  Neither had any interest or control over Atomica.

when in fact they were working in concert to fraudulently extract money from Chesapeake Bank and usurp the corporate opportunities of Atomica.[10]

**(c)   Allegation as to Divan:**

- On August 10, 2009, Divan electronically verified Atomica's invoices to Chance Productions knowing that Stromberg would have such verifications forwarded to Chesapeake Bank for the purpose of misrepresenting that Chance Productions was a customer of Atomica, when in fact Chance Productions was Atomica's partner in So Real Brands.[11]

- Divan knowingly and intentionally misrepresented to Chesapeake Bank that Atomica invoices to Chance Productions were legitimate and subject to payment by Chance Productions, failing to inform Chesapeake Bank that Chance Productions was a partner to Atomica and not a paying customer.

- Divan's representations were made to induce and did induce Chesapeake Bank to purchase the verified invoices and to advance even greater sums for Defendants to misappropriate for their own benefit.

- These fraudulent invoices totaled no less than $107,145.00.

**(d)   Allegations as to Haley:**

- On August 28, 2009, Haley telephonically verified Atomica invoices to So Real Brands to Chesapeake Bank, knowingly and intentionally misrepresenting that the invoices were for services performed by Atomica to So Real Brands.[12]

- Haley failed to disclose to Chesapeake Bank that he was an employee of Atomica.

---

[10]    This conclusion is totally unsupported by any facts pertaining to Haly, Divan, or Chance Productions.

[11]    The invoices that Divan "verified" were not the false invoices which are the subject of the Complaint.  The invoices which were verified were dated from 5/27/09 to 6/25/09. *See* Exhibit 6 to the Complaint.  The "sham" Chance Productions invoices at issue in this matter were dated from 9/15/2009 to 10/30/2009. *See* Exhibit 10 to the Complaint.  It is undisputed that Atomica did some work for Chance Productions prior to the joint venture agreement. *See* Complaint, ¶ 28.  The only reasonable inference from these factual allegations is that these "verified" invoices were the actual invoices for the work that Atomica performed for Chance Productions, which predated the joint venture.

[12]    This four minute phone call was initiated by Chesapeake Bank to Haley.  Haley was never shown any invoices and was not responsible for Atomica's billing.

- Haley's representations to Chesapeake Bank were false in that Atomica was not billing So Real Brands for work performed.

- Haley's representations were made to induce and did induce Chesapeake Bank to purchase the verified invoices and to advance even greater sums for Defendants to misappropriate for their own benefit.

- These fraudulent invoices totaled no less than $114,566.75.

- In November 2009, Atomica ceased operations. Defendants have misappropriated confidential and proprietary information from Atomica, including its product designs and design and sales strategies. Defendants continue to offer these products for sale to the prejudice of Chesapeake Bank.

In summary, the Plaintiff particularizes, (1) as against Divan/Chance Productions[13], an email on August 10, 2009, from Divan, out of New York and months prior to signing a joint venture agreement, in response to the Atomica bookkeeper (not Stromberg) who made no specific reference to Chesapeake Bank or Virginia, which was forwarded by the bookkeeper to Chesapeake Bank in Virginia, and (2) as against Haley, a four minute phone call of "due diligence" *placed by* Chesapeake Bank to Haley at work in Pennsylvania. There are no factual particulars alleging Divan or Chance Productions had any direct contact with Chesapeake Bank, and, except for the 4 minute phone call, the same is true of Haley. Moreover, there is no factual particular alleging Haley, Divan, or Chance Productions had any interaction with Stromberg, let alone particulars evidencing and or alleging the existence of emails, letters, phone calls, meetings, conversations, or the like. There are no facts from which can be gleaned even the remotest inference that Haley, Divan, or Chance Productions was in any way tied to Stromberg

---

[13]     Starkly absent from the Plaintiff's Opposition is any reference to the email thread of November 2 to November 5, 2009, originally attached as Exhibit 10 to the Complaint as evidence of participation by Jud and Divan, which reflects communication between Divan, Stromberg, and Jud. Such exhibit, as noted in Defendants' Motion, was doctored, changing the writings of both Divan and Jud. One is only left to wonder why Stromberg would feel and have the need to doctor the words of Divan and Jud if they were actually engaged with him in his nefarious behavior. Upon information and belief it is that doctored exhibit which led to the dismissal of Jud.

or were acting in complicity with a Stromberg scheme.   There are no facts or allegations reflecting an agreement to enter a conspiracy or reflecting knowledge that Stromberg was conducting a scheme defrauding a Bank in Virginia.

## II.   <u>APPLICABLE LAW AND ARGUMENT</u>

The Plaintiff ends its opposition argument addressing the primary issue raised by Haley, Divan and Chance Productions:   the lack of personal jurisdiction, an issue of constitutional significance.   Plaintiff argues that the Defendants personal jurisdiction argument is meritless and concludes by observing that: "Here, nobody disputes the nature and extent of Stromberg's contacts with Virginia, and the Moving Defendants are tarred with the jurisdictional brush that paints him."

Thus, in the instant case the Plaintiff appears to concede that Haley, Divan, and Chance Productions have no contacts of their own sufficient to justify this Court's assertion of personal jurisdiction over these Defendants.   In fact, the Plaintiff makes no attempt to argue that the Court has personal jurisdiction based on contacts or personal actions of Defendants, either specific or general jurisdiction.   Rather, Plaintiff relies exclusively on the conspiracy theory of jurisdiction.

### A.     *Personal jurisdiction based on conspiracy theory.*

In order to rely on the conspiracy theory of personal jurisdiction whereby the acts of a co-conspirator are imputed thus serving as the requisite contacts, the allegations of the complaint must adequately tie the "foreign defendant" to the alleged conspiracy forming the basis of establishing personal jurisdiction. Here, the allegations of the complaint do not tie Haley, Divan, or Chance Productions to the conspiracy forming the basis of establishing jurisdiction.   In fact, the RICO and common law conspiracy alleged states particulars only as against the "ring leader," Stromberg, but provide virtually no factual detail regarding any particulars tying Haley,

Divan, or Chance Productions to Stromberg, the ring leader of this the alleged conspiracy.[14]
Thus, because the Plaintiff has failed to sufficiently allege particulars tying the Defendants to the
alleged conspiracy, the court cannot impute contact, and reliance on the conspiracy theory of
personal jurisdiction must fail.

This Court has spoken clearly, and recently, regarding what needs to be present in order
to comply with the due process arising from imputation of sufficient contacts.  In *Noble Security,
Inc., et al. v. MIZ Engineering, LTD.*, 611 F.Supp.2d 513, 538-40 (E.D.Va.2009), the Honorable
Mark S. Davis wrote as follows[15]:

> Specific personal jurisdiction in the conspiracy context need not be based
> exclusively on actions of the named defendant(s). However, according to the
> Supreme Court, "[t]he unilateral activity of those who claim some relationship
> with a nonresident defendant cannot satisfy the requirement of contact with the
> forum state." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d
> 1283 (1958). "The application of that rule will vary with the quality and nature of
> the defendant's activity, but it is essential in each case that there be some act by
> which the defendant purposefully avails itself of the privilege of conducting
> activities within the forum State, thus invoking the benefits and protections of its
> laws." *Id.* (citing *Int'l Shoe Co.*, 326 U.S. at 319). The defendant must be able to
> "reasonably anticipate being hauled into court [in the forum state]" based on the
> defendant's contacts with that state. *World-Wide Volkswagen Corp. v. Woodson*,
> 444 U.S. 286, 287, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).
>
> While it is true that a defendant will not be subject to personal jurisdiction
> based on the unilateral activity of one who claims a relationship with that
> defendant, courts also recognize that personal jurisdiction may, in some
> circumstances, be based upon acts by a co-conspirator. 16 James Wm. Moore et
> al., *Moore's Federal Practice* § 108.42[3][b], at 108-67 (3d ed. 1997) (collecting
> cases). The courts acknowledging the conspiracy theory of jurisdiction seem to
> recognize that a **<u>defendant who joins a conspiracy knowing that acts in
> furtherance of the conspiracy have taken or will take place in the forum state</u>**

---

[14]    The Plaintiff has alleged in its Complaint that Stromberg was the ring leader.  What is
pled is not a RICO Conspiracy, but rather "a garden variety fraud scheme" conducted by a Chief
Financial Officer of a Company who was apparently empowered with far too much authority and
trust.  *See   Foster v. Wintergreen Real Estate Company*, 2010 U.S. App. Lexis 2050 (4th
Cir.2010).

[15]    Emphasis added in bold and underlined.

is subject to personal jurisdiction in that forum state because the defendant has purposefully availed himself of the privileges of that state and should reasonably expect to be hauled into court there. *See id*. at n.24.2 (citing cases by circuit). For example, in *Dodson Int'l Parts, Inc. v. Altendorf*, 181 F. Supp. 2d 1248 (D. Kan. 2001), the court found that personal jurisdiction may be based on contacts of a co-conspirator who performed substantial acts in the forum state in furtherance of the conspiracy **when the out-of-state co-conspirator was or should have been aware of those acts**. *Id*. at 1254.

The Fourth Circuit recently reiterated the existence of such personal jurisdiction flowing from a conspiracy. *Consulting Engineers Corp*., 2009 U.S. App. LEXIS 6081, 2009 WL 738165, at *1-4. Furthermore, several district courts in Virginia and elsewhere in the Fourth Circuit have found personal jurisdiction to exist based upon conspiratorial activity. A court in the Eastern District of Virginia has found that exercising personal jurisdiction over alleged co-conspirators does not offend traditional notions of justice and fair play. *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 622 (E.D. Va. 2002) (explaining that a co-conspirator is subject to jurisdiction in a forum where substantial acts in furtherance of the conspiracy were performed by any **member of the conspiracy if the co-conspirator knew or should have known that the acts would be performed**). Moreover, participation in an alleged conspiracy is sufficient to subject a defendant to personal jurisdiction in a forum even though the defendant's only contact with that forum was through the actions of a co-conspirator. *See Gemini Enters., Inc. v. WFMY Television Corp*., 470 F. Supp. 559, 564 (M.D.N.C. 1979) (explaining that connections between the conspiracy and the forum state can provide a sufficient basis for a court to assert personal jurisdiction over a nonresident co-conspirator). The *Gemini* court adopted the rationale that the necessary connections exist where "substantial acts in furtherance of the conspiracy were performed in the forum state and **the co-conspirator knew or should have known that acts would be performed in the forum state**." *Id*. Another court in this district has also noted that a defendant's participation in an alleged conspiracy provided a basis for that court to assert personal jurisdiction over a defendant. *See America Online, Inc. v. Ambro Enters*., No. 04-1498, 2005 U.S. Dist. LEXIS 46261, 2005 WL 2218433, at *3 n.1 (E.D. Va. Sept. 8, 2005). The *America Online, Inc*. court cited to *Gemini* and noted that it was sufficient to **allege that the defendants in question participated in the conspiracy, and that since they knew, or should have known, that contact with Virginia would result**, their participation in the conspiracy was a sufficient basis for the court to assert personal jurisdiction under the Virginia long-arm statute. *Id*.

The Court ultimately concluded that in order to exercise conspiracy theory personal jurisdiction over three Defendants who were alleged co-conspirators, not only must there be sufficient allegation of participation in the conspiracy, but there must also be factual allegations

specifically **showing the foreign co-conspirators knew or should have known of the actions of their co-conspirator in the forum state**. *Noble, supra* at 22-24.   The Court found such evidence in emails, correspondence and meetings amongst the co-conspirators, tying them to the conspiracy and serving as factual basis for allegations that they should have known of the co-conspirator 's actions in the forum state. *Id.*   The Court, in *Noble*, cites 16 James Wm. Moore et al., *Moore's Federal Practice* § 108.42[3][b], at 108-67 (3d ed. 1997) (collecting cases).   Such collection summarizes the rulings in various Circuits as follows:

- *2d Circuit See*   Cleft of the Rock Found. v. Wilson, 992 F. Supp. 574, 581-582 (E.D.N.Y. 1998) (exercise of jurisdiction based on conspiracy theory was well established under New York law, and comported with due process because *defendant who joined conspiracy with knowledge that acts in furtherance of conspiracy had taken place in New York* purposefully availed himself of privilege of conducting activities there);  Allstate Life Ins. Co. v. Linter Group Ltd., 782 F. Supp 215, 220-222 & n.6 (S.D.N.Y. 1992) (court asserted jurisdiction over defendant based on conspiracy theory, which requires that plaintiff (*1) make prima facie showing of conspiracy, (2) allege specific facts showing defendant was member*, and (3) show that defendant's co-conspirator committed tortious act pursuant to conspiracy in forum state);

- *3d Circuit See*   Resource Ventures, Inc. v. Resource Mgmt. Int'l, Inc., 42 F. Supp. 2d 423, 434 (D. Del. 1999) (court may exercise jurisdiction under conspiracy theory when (1) conspiracy to defraud existed, (2) defendant was member, (3) substantial act or substantial effect in furtherance of conspiracy occurred in forum state, and (4) defendant knew or had reason to know of act or effect; *but jurisdiction not established under circumstances of this case because plaintiff failed to make required showing).*

- *4th Circuit See*   Miller v. Asensio, 101 F. Supp. 2d 395, 407-408 (D.S.C. 2000) (co-conspirator theory of venue, which allows all members of conspiracy to be sued where one of them committed wrongful act, would be adopted by Fourth Circuit; *but court declined to apply it in this case because there was no act or transaction in forum district in furtherance of conspiracy).*

- *7th Circuit See*   Stauffacher v. Bennett, 969 F.2d 455, 459 (7th Cir. 1992) (court noted that "[i]f through one of its members a conspiracy inflicts actionable wrong in one jurisdiction, the other members should not be

allowed to escape being sued there,*" but held that under circumstances conspiracy was not sufficiently alleged*).

- *9th Circuit See*  Underwager v. Channel 9 Austl., 69 F.3d 361, 364-365 (9th Cir. 1995) (*jurisdiction could not be based on conspiracy theory because plaintiff had not sufficiently alleged specific facts showing existence of conspiracy).*

- *10th Circuit See*  Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1069-1070 (10th Cir. 2007) (defendant may be subject to personal jurisdiction based on conspiracy if conspiracy is directed toward forum or if substantial steps in furtherance of conspiracy were taken in forum; *here, however, plaintiff failed to make out prima facie showing of conspiracy)*;  Dodson Int'l Parts, Inc. v. Altendorf, 181 F. Supp. 2d 1248, 1254 (D. Kan. 2001) (personal jurisdiction may be based on contacts of co-conspirator who performed substantial acts in forum state in furtherance of conspiracy *when out-of-state co-conspirator was or should have been aware of those acts*).

(*emphasis added*).

     In addition, the authority cited by the Plaintiff in its Opposition serves only to support personal jurisdiction over Stromberg, as a practical matter not an issue here, but does nothing to advance personal jurisdiction as against Haley, Divan, or Chance Productions.  For instance the Plaintiff relies heavily on *Eplus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir.2002), arguing the facts of Aboud are remarkably similar to those before the Court.  Nothing could be further from the truth.  *Aboud* involved a "bust out scheme" operated by one Carol Aboud out of Canada and involving millions of dollars in losses.  The *Aboud* Court went through a lengthy analysis of facts analysis before it concluded that the trial court had personal jurisdiction over Ms. Aboud herself, the mastermind of the scheme.  While perhaps very relevant to the issue of whether this Court has personal jurisdiction over Stromberg, the facts are in no way supportive of the issues as against such distant and remote individuals as Haley, Divan, and Chance Productions.  In *Aboud,* the Court did not find personal jurisdiction against a low level employee, like Haley, who was somehow related to one remote incident in the scheme conducted by Aboud. Nor did the

Court find personal jurisdiction against an individual or small company from an entirely different state, like Divan and Chance Productions, who were, again, related only remotely to one incident in the scheme conducted by Aboud. The decision relates to whether the Court had personal jurisdiction over Aboud, the ringleader.

Indeed, the Plaintiff's reliance on *Consulting Eng'rs Corp. v. Geometric, Ltd.,* 561 F.3d 273, 280 (4th. Cir.2009) and *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 398 (4th Cir.2003), is no more helpful. The Fourth Circuit in *Consulting Eng'rs Corp,* found no personal jurisdiction under Virginia law and in *Carefirst of Md., Inc,* found no personal jurisdiction under Maryland law. In both cases, the Fourth Circuit upheld the District Court's findings that the Plaintiffs offered only speculation and conclusory assertions in its complaint. Nor does *Verizon Online Servs. v. Ralsky,* 203 F. Supp. 2d 601, 622 (E.D.Va.2002) or *Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & brecher,* 635 F. Supp. 15, 18 (E.D.Pa.1995) advance personal jurisdiction as against these Defendants. In fact, in *Ethanol Partners Accredited,* 635 F. Supp. at 22, the court dismissed the RICO, common law fraud, common law conspiracy, and conversion counts for failure to particularize its allegations, stating as follows:

> The plaintiffs here have failed to particularize the various acts of fraud which they attribute to the defendants here. The plaintiffs fail to state "time, place, and manner" of each of the defendants' fraudulent statements or actions. The plaintiffs here have used a "shotgun" approach in their pleading. This is not sufficient to meet the requirement of Fed. R. Civ. P. 9(b). Accordingly, I find that Count II lacks the requisite particularity to such an extent that the defendants have not been put on notice as to what to defend against….

Likewise, in *Verizon Online*, the court's holding serves these Defendants. While the Court found personal jurisdiction over the foreign defendant co-conspirators, it did so only after concluding that very specific facts tied such Defendants to the conspiracy which formed the basis of establishing personal jurisdiction. *Verizon Online*, 203 F. Supp. 2d at 622,

B.      *There are no allegations that the Defendants knew or should have known of the conspiracy that is necessary to assert personal jurisdiction based solely on a conspiracy theory.*

In the instant matter, and notwithstanding what appears to have been a scheme conducted by Stromberg, the CFO of Atomica, the Court has before it a Divan/Chance Productions email on August 10, 2009, out of New York and months prior to signing a joint venture agreement, in response to the Pennsylvania Atomica bookkeeper who made no specific reference to Chesapeake Bank or Virginia, which was then forwarded by the bookkeeper to Chesapeake Bank in Virginia, and a four minute phone call of due diligence placed by Chesapeake Bank to Haley in Pennsylvania.  The Court has no factual particulars alleging Divan or Chance Productions had any direct contact with Chesapeake Bank.  Except for the 4 minute phone call, the same is true of Haley.  Moreover, the plaintiff has not alleged any particular facts alleging that Haley, Divan, or Chance Productions had any agreement with Stromberg or was aware, or should have been aware, of Stromberg's activities.  There is no allegation of even any benefit these Defendants received.  There is no other emails, letters, phone calls, meetings, conversations, or the like from which even an inference can be raised that Haley, Divan, or Chance Productions were in any way tied to Stromberg or acting in complicity with a Stromberg scheme.  There is no factual particulars reflecting an agreement to enter a conspiracy or reflecting any knowledge on the part of Haley, Divan, and Chance Production of Stromberg's alleged scheme to defraud a bank in Virginia. The only thing that Haley, Divan, and Chance Production can be guilty of is being tarred by Chesapeake Bank's "shotgun approach" of false, conclusory allegations in the complaint, obviously in the hope of finding a solvent defendant.  Given the utter void of particularized evidence of participation in this RICO conspiracy and the related counts as to

these Defendants, the Court cannot conclude that personal jurisdiction based solely upon a conspiracy theory meets the due process requirements.

        **C.**      ***The Complaint fails to state a claim upon which relief may be granted.***

Plaintiff's Opposition fails to adequately address the deficiencies in pleading noted by the Defendants in their motion to dismiss for failure to state a claim upon which relief may be granted. The Plaintiff has not pled sufficient factual allegations to sustain a cause of action against these Defendants and the Complaint should be dismissed on those grounds if this Court is unable to dismiss the Complaint for lack of personal jurisdiction.

**III.**    <u>**CONCLUSION**</u>

WHEREFORE, the Defendants Thomas Haley, David Divan and Chance Productions, Inc., respectfully request that this Court grant this motion to dismiss, enter an order dismissing Plaintiff Chesapeake Bank's Complaint against them with prejudice, and for any such other and further relief as this Court deems appropriate and just.

Dated:  July 6, 2010                  Respectfully submitted,

                                        _____/s/_____
                                        David Hilton Wise
                                        Virginia bar number:  30828
                                        James P. Lukes
                                          Virginia bar number:  73752
                                        Attorneys for Defendants Thomas Haley, David
                                            Divan & Chance Productions, Inc.
                                        WISE LAW, PLC
                                        11325 Random Hills Road, Suite 350
                                        Fairfax, Virginia 22030
                                        Phone:    703-934-6377
                                        Fax:      703-934-6379
                                        dwise@wiselawplc.com
                                        jlukes@wiselawplc.com
                                        *By Special Appearance*

Of Counsel:

Patrick M. Donahue, Esq.
The Donahue Law Firm
18 West Street
Annapolis, Maryland 21401
Tel:      (410) 280-2023
Fax:      (410) 280-0905
pmd@thedonahuelawfirm.com
Attorney for Defendants David Divan &
          Chance Productions, Inc.
*Admitted pro hac vice*
*By Special Appearance*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of July, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Paul W. Jacobs, II, Esq.
> Rowland Braxton Hill, IV, Esq.
> Belinda D. Jones, Esq.
> CHRISTIAN & BARTON, LLP
> 909 E. Main Street, Suite 1200
> Richmond, Virginia 23219
> pjacobs@cblaw.com
> bhill@cblaw.com
> bjones@cblaw.com
> *Counsel for Plaintiff Chesapeake Bank*

> William D. Bayliss, Esq.
> Brendan D. O'Toole, Esq.
> WILLIAMS MULLEN
> 1021 E. Cary St.
> PO Box 1320
> Richmond, Virginia 23218
> bbayliss@williamsmullen.com
> botoole@williamsmullen.com
> *Counsel for Defendants Joseph Gerry Cullen, So Real Brands, LLC, and Logistics Associates of Wilmington, LLC*

And I hereby certify that I will mail the document by U.S. Mail to the following non-filing users:

> Mr. Jason D. Blemings
> 800 Shadeland Avenue
> Drexel Hill, Pennsylvania 19026
> *Pro Se Defendant*

> _____/s/_____
> James P. Lukes
> Virginia bar number: 73752
> Attorney for Defendants Thomas Haley, David Divan & Chance Productions, Inc.
> WISE LAW, PLC
> 11325 Random Hills Road, Suite 350
> Fairfax, Virginia 22030
> Phone:      703-934-6377
> Fax:          703-934-6379
> jlukes@wiselawplc.com
> *By Special Appearance*