IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHESAPEAKE BANK

    Plaintiff,

v.                              Civil No. 3:10cv247

JOSEPH GERRY CULLEN, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on HALEY'S, DIVAN'S, & CHANCE PRODUCTION, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED (Docket No. 14). For the reasons set forth below, the motion will be denied.

## BACKGROUND

This civil action has its genesis in a Cash Flow Agreement, dated July 27, 2007, between the Plaintiff, Chesapeake Bank (the "Bank"), and Atomica Design, Inc. ("Atomica"), a company specializing in graphic design for consumer packaging and marketing. Compl. ¶¶ 15-16. Under the terms of the Cash Flow Agreement, Atomica would forward accounts receivable information to the Bank, which, in turn, would purchase receivables from Atomica, placing a

1

portion of the proceeds from each receivable's sale in Atomica's account for Atomica's discretionary use. Id. ¶¶ 17-18.

The Bank alleges that Atomica began to collaborate with Chance Productions on the packaging design for select Chance Productions products in Spring 2009. Id. ¶ 27. The collaboration came at the behest of Defendant David Divan, a controlling member of Chance Productions, and Joseph DiPalma, a principal of Atomica. Id. Divans' and DiPalma's collaboration culminated in a formal Joint Venture Agreement, which DiPalma charged Joseph Gerry Cullen, Atomica's Chief Development Officer, with overseeing. Id. ¶ 28. The Bank maintains that Atomica failed to disclose the existence and nature of the Joint Venture Agreement to the Bank, as required by the Cash Flow Agreement. Id. ¶ 29.

The joint venture operated under the moniker "So Real Brands, LLC," which was formed under Delaware law on June 29, 2009. Atomica and Chance Productions each had a fifty percent stake in the company. Id. ¶¶ 33-34. Through So Real Brands, Atomica would design and develop, among other products, arts, crafts, and stationary and activity items and perform market research, product design, and the like on these products, after which Chance Productions would

sell the products thusly developed to retail chains such as Dollar General, Five Below, Walgreens, Toys R Us, Hobby Lobby, AC Moore, Michael's, and larger retail outfits such as Wal-Mart, Big Lots, and Target. Id. ¶ 30.

On or about August 1, 2009, Atomica hired Defendant Thomas Haley, a close friend of Divan, as a senior account manager. The Bank asserts that Haley worked as an Atomica representative on the So Real Brands joint venture with Chance Productions. Id. ¶ 39.

At its core, the Bank's complaint alleges that Defendants Divan, Haley, and Chance Productions (collectively, the "Defendants"), among others, defrauded the Bank out of hundreds of thousands of dollars. Id. ¶ 41. Specifically, the Bank claims that Divan and Haley posed as legitimate customers of Atomica in order knowingly to give the Bank the false impression that the invoices it was purchasing from Atomica were bona fide financial statements from independent third-party customers when in fact they were not. See id. ¶¶ 41-51. In furtherance of this ruse, the Bank proffers that Divan verified Atomica's invoices for Chance Productions electronically to Bernard Stromberg, Atomica's Chief Financial Officer, knowing that Stromberg would forward these electronic verifications to the Bank. Id. ¶ 48. The Bank also alleges that Divan

3

intentionally misrepresented that the invoices were legitimate and failed to inform Chesapeake Bank that he was a principal in Chance Productions, Atomica's partner in the So Real Brands joint venture. Id. ¶ 49.

According to the Complaint, Haley also played an active role in the fraud scheme. It is alleged that Haley forwarded emails containing So Real Brands' financial statements to the Bank and verified Atomica's invoices for So Real Brands over the telephone to representatives of the Bank. Through this course of conduct, the Bank asserts, Haley misrepresented that the invoices memorialized legitimate services performed by Atomica for So Real Brands, all the while failing to inform the Bank that he was in fact an employee of Atomica. Id. ¶¶ 50-51.

Defendants' fraud scheme allegedly continued until November 2009. At that time, the Bank informed Atomica that it believed the latter had submitted fraudulent invoices in an effort to obtain cash advances under the Cash Flow Agreement. Id. ¶ 150. The Bank claims $800,000.00 in damages, for which it seeks relief in this civil action. Id.

The Bank's complaint contains five counts. Count One alleges that the Defendants violated the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §

1962(c)). Id. ¶¶ 158-67. Count Two alleges that the Defendants committed common law conspiracy in their collective effort to obtain money from the Bank by unlawful means. Id. ¶ 169. Count Three alleges that the Defendants committed fraud by knowingly submitting and verifying false invoices to the Bank in exchange for cash payments from the same under the Cash Flow Agreement. Count Four alleges that the Defendants committed conversion through distinct acts of dominion or control wrongfully exerted over the property of the Bank. Id. ¶ 179. Finally, Count Five alleges that the Defendants enriched themselves unjustly by wrongfully obtaining the Bank's money. Id. ¶ 182.

The Defendants filed a motion to dismiss this action as to them for lack of personal jurisdiction and failure to state a claim upon which relief may be granted. The motion is fully briefed and ripe for decision.

## DISCUSSION

### I. Personal Jurisdiction

The plaintiff bears the burden of demonstrating jurisdiction. Mylan Labs, Inc. v. Akzo. N.V., 2 F.3d 56, 59-60 (4th Cir. 1993). But where, as here, the Court addresses the question on the basis only of motion papers, supporting legal memoranda, and the relevant allegations of a complaint, the burden on the plaintiff is simply to make

5

a prima facie showing of a sufficient jurisdictional basis to survive the challenge. New Wellington Fin. Corp. v. Flagship Resort Dev. Co., 416 F.3d 290, 294 (4th Cir. 2005) (citations and quotation marks omitted). Under such circumstances, courts are to construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. Id. (citations and quotation marks omitted).

In order for a court to exercise personal jurisdiction over a defendant, the exercise of that jurisdiction must both be authorized by state law and comport with the Due Process Clause of the Fourteenth Amendment. Id. The exercise of jurisdiction in Virginia is governed by the Commonwealth's long-arm statute (Va. Code § 8.01-328.1), which has been held to extend personal jurisdiction to the fullest extent permitted by due process. Id.; Roche v. Worldwide Media, Inc., 90 F. Supp.2d 714, 716 (E.D. Va. 2000). The requirements of the Due Process Clause can be met through establishing either specific or general jurisdiction. Specific jurisdiction exists where the controversy in suit arises out of sufficient contacts with the state to make the exercise of jurisdiction reasonable. See Helicopteros

Nacionales de Colombia v. Hall, 466 U.S. 408, 414-15 (1984). Alternatively, general jurisdiction can exist even where a claim does not arise from a defendant's interactions with the state where he has sufficient continuous and systematic contacts with the state to satisfy due process. Id. General jurisdiction is not at issue in this action. See Compl. ¶ 13 (premising jurisdiction on Virginia's long-arm statute alone).

The Bank claims that this Court has personal jurisdiction over the Defendants under Va. Code § 8.01-328.1(A)(1). Id. ¶ 13. That section of what is commonly referred to as the Virginia Long-Arm Statute reads, in relevant part, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from that person's: (1) Transacting any business in this Commonwealth . . . ." Va. Code § 8.01-328.1(A)(1). The Defendants counter that Va. Code § 8.01-328.1(A)(1) does not support personal jurisdiction as to them based on the factual allegations contained in the Complaint. As they assert, the "only actions Haley is alleged to have undertaken were connected with Chesapeake Bank's verification efforts of certain invoices after Chesapeake Bank contacted Haley at a Pennsylvania phone number." Mem. in Supp. at 3. "The only

actions Divan is alleged to have undertaken in the Complaint," the Defendants continue, "were sending emails to [employees] of Atomica, which were subsequently forwarded on to Chesapeake Bank." Id. at 4. The Defendants also highlight that Divan's email were not delivered or received in Virginia. Id. As to Chance Productions, the Defendants maintain that it is a non-Virginia corporation that performed all its business activities outside Virginia. Id. For the foregoing reasons, the Defendants insist that they have not "transacted business" within the meaning of Va. Code § 8.01-328.1(A)(1) and, as a corollary, cannot be subject to personal jurisdiction in Virginia. Id. at 5.

Although the Defendants may be correct that they had few, if any, direct physical ties to Virginia throughout the events described in the Complaint, they are not correct to conclude that this alone removes their conduct from the ambit of Va. Code § 8.01-328.1(A)(1) and the jurisdictional reach of this Court. Recalling the language of Va. Code § 8.01-328.1(A)(1), transacting *any* business in Virginia is enough to subject out-of-state defendants to personal jurisdiction in this forum. And, as courts have made abundantly clear, the Virginia long-arm statute is intended to extend personal jurisdiction to the fullest extent

possible under the Due Process Clause; hence, the statutory analysis merges with the constitutional analysis. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (citing Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002)). In synthesizing the statutory and constitutional inquiries, the Fourth Circuit applies a three-part test in which a court considers: (1) the extent to which the defendant purposefully availed himself of the privilege of conducting activities in the Commonwealth; (2) whether the plaintiff's claims arise out of those activities directed at the Commonwealth; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. See id.; see also Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). Applying this test does not involve a simple quantitative tallying of a defendant's contacts with the Commonwealth, for the heart of the inquiry involves focusing on the quality and nature of a defendant's contacts with Virginia. See Nichols v. G.D. Searle & Co., 783 F. Supp. 233, 238 (D. Md. 1992), aff'd, 991 F.2d 1195 (4th Cir. 1993). Even a single contact can be sufficient to support personal jurisdiction when the action arises out

of that contact, if, of course, under the pleaded facts, the due process tenets of "fair play and substantial justice" are not thereby offended. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985)).

The Bank has pleaded adequate facts to make out a prima facie showing that the Defendants transacted business in Virginia within the meaning of Va. Code § 8.01-328.1(A)(1). According to the Complaint, Divan verified Atomica's invoices to Chance Productions, by email, knowing that such verifications would be forwarded to the Bank, a Virginia entity. Compl. ¶ 48. Indeed, a Bank representative was clearly noted as a carbon copy recipient on the email delivered to Divan requesting such verifications. Compl. Ex. 6. From such information, it can be inferred fairly that Divan knew he was transacting business with a bank in Virginia. As to Haley, the Complaint alleges that he forwarded So Real Brands' financial statements to the Bank and verified Atomica's invoices for So Real Brands, by telephone, to representatives of the Bank in Virginia. Compl. ¶ 50. In light of that conduct, it is reasonable to conclude that Haley knew that he was transacting business with a bank in Virginia. The Complaint alleges that Divan was the controlling member of Chance Productions and that he

carried out the acts discussed above, which have been held to give rise to jurisdiction, under the auspices of that corporation's mantle. Id. ¶¶ 27, 48-49. Accordingly, the Complaint provides a sufficient basis upon which to find that Chance Productions conducted business in Virginia. In short, the Court has little difficulty concluding that the Defendants, through their own conduct, purposefully availed themselves of the privilege of conducting business in the Commonwealth.

Even if this were not the case, however, the Defendants would still be subject to personal jurisdiction in Virginia based on the acts of their co-conspirators. Courts in this Circuit have long recognized that personal jurisdiction can be predicated on the contacts of co-conspirators who perform substantial acts in the forum state in furtherance of the conspiracy, provided the out-of-state co-conspirators were, or should have been, aware of such acts. See, e.g., Consulting Eng'rs, 561 F.3d at 275-80; Verizon Online Servs., Inc. v. Ralsky, 203 F. Supp.2d 601, 622 (E.D. Va. 2002); Gemini Enters., Inc. v. WFMY Television Corp., 470 F. Supp. 559, 564 (M.D. N.C. 1979). In essence, an out-of-state co-conspirator may be found to have purposefully availed himself of a forum state through the acts of a co-conspirator. In this action, the

Bank has alleged sufficient facts to make out a prima facie showing that the Defendants knowingly participated in a conspiracy involving a co-conspirator—namely, Stromberg, the Bank's direct business contact with Atomica—who carried on substantial business in Virginia by repeatedly submitting fraudulent invoices to the Bank, a Virginia entity. Compl. ¶ 45. The only real question—if there is one at all—is whether the Defendants knew, or had reason to know, of Stromberg's contacts with the Bank. From the facts alleged, it is eminently reasonable to conclude that the Defendants knew their co-conspirator Stromberg would carry out a significant part of the fraud scheme by sending fabricated invoices to the Bank in Virginia—and to the extent that they did not, they should have considering that they knowingly participated in a scheme to defraud a bank that they knew was located in Virginia. Thus, even if the Defendants' own conduct did not constitute transacting business in Virginia, Stromberg's conduct did, thereby subjecting the Defendants to personal jurisdiction in Virginia as co-conspirators cognizant of Stromberg's conspiracy-furthering contacts with the forum.

The second facet of this Circuit's jurisdictional analysis—that is, whether the plaintiff's claims arise out of those activities directed at the Commonwealth—is not in

controversy. It is clear from the pleadings that the Bank's claim arises out of the pecuniary harm it suffered from the alleged fraud scheme. Id. ¶¶ 64, 76, 89, 97, 110, 113, 115, 117, 119, 121, 123, 125, 127, 129, 131, 133, 135, 137, 139, 141, 143, 145, 147, 149. That harm was directed no doubt at Virginia to the extent that the Defendants knowingly sought to defraud a bank located in the Commonwealth.

With the direction of the harm uncontroverted, the final question under this Circuit's jurisdictional analysis is whether exercising personal jurisdiction over the Defendants would be constitutionally reasonable. To be reasonable, the exercise of personal jurisdiction must align with "fair play and substantial justice." Burger King v. Rudzewicz, 471 U.S. 462, 477 (1985). In a way, the question of reasonableness has been answered already because the analysis on purposeful availment touches substantially on the reasonableness of bringing in out-of-state defendants to a Virginia court. Nevertheless, one additional point bears mentioning.

This action involves allegations of fraud, and, in that vein, the reasonableness analysis departs markedly from the corresponding analysis in the case that the Defendants would have this Court apply. The Defendants

cite Promotions Ltd. v. Brooklyn Bridge Centennial Commission, 763 F.2d 173 (4th Cir. 1985), for the proposition that the "unilateral activity" of the Bank cannot support personal jurisdiction over Haley. In Promotions, the Fourth Circuit held that a Virginia company's mere contacting an out-of-state defendant about marketing pieces of the Brooklyn Bridge, and the latter's forwarding of contacts to third parties, did not establish the minimum contacts required for personal jurisdiction over the out-of-state defendant in Virginia. 763 F.2d at 175. Particularly salient for the Defendants is the Promotions Court's conclusion that, "[i]f personal jurisdiction were found [on the facts described above], a party could scarcely answer its mail or pick up its telephone without becoming subject to the long-arm statute of the caller or correspondent's state." Mem. in Supp. at 10 (quoting Promotions, 763 F.3d at 175). What the Defendants fail to recognize, however, is that the Complaint in this action alleges far more than an out-of-state defendant's forwarding information to a third party passively. The Bank contends that, knowing them to be false, Haley forwarded emails verifying So Real Brands' financial statements to the Bank directly, and that he made telephonic statements to the Bank verifying Atomica's

14

financial statements.[1] Compl. ¶ 50. Moreover, and more directly pertinent to the question of reasonableness, the Bank asserts that Haley made such verifications with the deliberate intent of defrauding a Virginia bank. Id. Based on the allegations in the Complaint, therefore, Haley is hardly the passive intermediary that the out-of-state defendant in Promotions was. Promotions, in short, is inapposite to the action at hand. Having Haley, an allegedly active conspirator in a scheme to defraud a Virginia bank, answer for his conduct in Virginia neither offends traditional notions of fair play nor substantial justice. Thus, the assertion of personal jurisdiction over Haley is reasonable.

The exercise of personal jurisdiction over Divan and Chance Productions in Virginia is likewise reasonable. The Complaint maintains that Divan, a principal of Chance

---

[1] The Defendants are apt to point out that the Bank called Haley in Pennsylvania, rather than the latter calling the former. This fact, they argue, facilitates their conclusion that the Complaint states no "factual particulars" showing Haley to have had "direct contact" with the Bank. See Rep. to Pl. Opp. at 8. All the Defendants have accomplished with this line of analysis, however, is to offer a distinction without a difference. Whether Haley called the Bank or the Bank called him, the Complaint makes clear that Haley knowingly made misrepresentations to the Bank during the course of the telephone call. Compl. ¶¶ 50-51. The Court has little trouble finding that such conduct establishes the requisite contacts for personal jurisdiction over Haley in Virginia.

15

Productions, fraudulently verified invoices to Stromberg by email, knowing that Stromberg would pass them on to Chesapeake Bank in Virginia. Compl. ¶ 48. Traditional notions of fair play and substantial justice are not offended by having Divan and Chance Productions answer for that kind of egregious conduct in Virginia, the place at which allegedly their conduct was aimed and the place where such conduct inured to the detriment of the Bank.

In sum, personal jurisdiction is proper as to the Defendants in Virginia. They transacted business in Virginia within the meaning of Va. Code § 8.01-328.1(A)(1) and, in so doing, purposefully availed themselves of the forum. Additionally, there is no dispute that, to the extent that the Bank's allegations are true, the Bank's damages arose, at least in part, from the Defendants' fraudulent activities aimed at the Commonwealth. Finally, exercising personal jurisdiction over the Defendants in Virginia does not affront the Constitution's reasonableness requirement.

II. **Failure to State a Claim Upon Which Relief May Be Granted**

At oral argument, the Defendants abandoned their pendant motion to dismiss this action for failure to plead adequately Racketeer Influence and Corrupt

16

Organizations Act, conspiracy, fraud, conversion, and unjust enrichment claims. Accordingly, the Defendants' motion under Fed. R. Civ. P. 12(b)(6) is denied as moot.

## CONCLUSION

For the foregoing reasons, HALEY'S, DIVAN'S, & CHANCE PRODUCTION, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED (Docket No. 14) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 21, 2010